IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OTIS C. RUSH,                                                      CV. 06-1701-AS

                Plaintiff,                                    FINDINGS AND
                                                                  RECOMMENDATION

     v.

OREGON STEEL MILLS, INC., a Delaware
corporation, dba Oregon Steel Mills,

                Defendant.
_____

ASHMANSKAS, Magistrate Judge:

      Plaintiff Otis C. Rush ("Plaintiff"), filed this action against his former employer, Oregon

Steel Mills, Inc.[1] ("Defendant), for racial and disability discrimination, as well as violation of state

and federal family leave acts and Oregon's workers' compensation statutes, and two common law

claims.  Defendant now moves to dismiss both of the common law claims – Plaintiff's Sixteenth

_____

      [1]Oregon Steel Mills, Inc., has gone through a corporate acquisition and the corporate
entity is now known as Evraz Oregon Steel Mills, Inc.

Claim for Relief for Intentional Infliction of Emotional Distress and Seventeenth[2] Claim for Relief

for Wrongful Discharge.

<u>Background</u>

Plaintiff is an African-American male who suffers from physical and psychological

impairments which limit, to some degree, various major life activities. However, these impairments

do not prevent Plaintiff from working. In fact, Plaintiff worked for Defendant for over seventeen

and a half years before his termination.

In May 2005, Defendant assigned a new manager, Miles Brittain, to the Technical Services

Department[3] where Plaintiff worked as a "sample burner." Allegedly, Brittain and Plaintiff did not

see eye to eye on a number of things. Brittain refused to shake Plaintiff's hand on more than one

occasion. Brittain required Plaintiff to report directly to Brittain regarding his attendance and

subjected Plaintiff to enhanced scrutiny regarding his work habits and performance. In July 2004,

Plaintiff suffered an aggravation of a previous on-the-job back injury and Brittain allegedly denied

Plaintiff the opportunity to file a workers' compensation claim. Brittain found Plaintiff to be

ineligible for reinstatement of his seniority for September 2000 through January 2002, during which

Plaintiff left his employment with Defendant to recover from a mental illness.[4] When Plaintiff

attempted to explain the situation to Brittain, Brittain shouted "I don't know how to take you kind

---

[2]Plaintiff incorrectly designates this claim as his Fifteenth Claim for Relief which results in two Fifteenth Claims for Relief. Accordingly, the court will refer to the wrongful discharge as the Seventeenth Claim for Relief.

[3]Plaintiff was the only person of "color" who worked in the Technical Services Department.

[4]Plaintiff alleges that Defendant implemented a policy of restoring seniority to employees who had taken leaves of absence or were otherwise not employed by Defendant for a period of time.

of people," refused to explain what he meant by that and laughed.

In August 2004, Defendant installed a new timekeeping system which Plaintiff had difficulty operating. Plaintiff informed his supervisors of his problems using the system but did not get any assistance for approximately eight months. He was cited on various occasions for his inability to properly use the timekeeping system.

In November 2004, Plaintiff complained to David J. Cranston, Defendant's Vice President, about Brittain's actions and words, describing them as racially motivated and discriminatory. He also indicated that he felt he was being subjected to a hostile work environment. Plaintiff alleges that his attendance and performance was placed under even greater scrutiny and that he was required to follow procedures that were not required of other employees. He received corrective action notices for attendance and other work problems and his supervisors documented the days he suffered side affects of the medication he took to treat his mental illness. He was denied leave under the state and federal leave acts even though he provided medical documentation of his illness and was eventually reprimanded for taking the time off.

During Plaintiff's employment with Defendant, he was reprimanded and/or issued corrective action notices on a number of occasions for a variety of reasons, including missing work due to medical issues and not providing timely notice that he had taken his psychiatric medication. He was also reprimanded for using the company truck for personal business, not punching out when he ate lunch in the parking lot with his wife, leaving the premises without his supervisors approval and being limited to a half-hour lunch, even though other employees were allowed to engage in these practices.

In May 2005, Plaintiff was issued a last chance notice warning him that any further

violations of the company attendance policy, time-clock policy, performance expectations and other violations would result in termination.  On May 12, 2005, Plaintiff notified Cranston that he believed this action was based on his race or disability and that he was being harassed by Brittain.  Within two weeks, Cranston responded to Plaintiff's complaints by explaining that he thought the allegations of discrimination were without merit but that Plaintiff's medical condition, which could explain some of the difficulties Plaintiff was experiencing, might justify a reasonable accommodation.  Despite this acknowledgment, Defendant failed to engage in a good faith or effective interaction process to determine what reasonable accommodations were needed by Plaintiff.

On August 15, 2005, Plaintiff received a letter from Cranston advising him that he was terminated for violating the last chance agreement.  Plaintiff does not describe the specifics of the violations but alleges that they "were a pretext for racial and disability discrimination, or retaliation for filing a racial or disability discrimination complaint, or discrimination or retaliation for requesting or taking leave protected by the FMLA or OFLA, or Workers' Compensation laws; or discrimination for requiring accommodation under the ADA or requesting ADA accommodation, or all of the above."  Amended Complaint at 11.

<u>Legal Standard</u>

Fed. R. Civ. P. 8 sets forth the basic rules for pleadings filed in this court.  The rule requires parties to set forth their claims or defenses in short and plain terms and that such claims or defenses shall be simple, concise and direct.  However, this plain statement "must possess enough heft to 'sho[w] that the pleader is entitled to relief.'" <u>Bell Atlantic Corp. v. Twombly</u>, ___ U.S. ___, 127 S.Ct. 1955, 1966 (2007).

A party may attack the sufficiency of the allegations in a pleading by filing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. While a federal claimant is not required to set out in detail the facts upon which he bases a claim under the liberal system of notice pleading, a party's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965(citations omitted ), In other words, the party must allege sufficient facts to raise a reasonable expectation that additional discovery will reveal evidence to support each element of the claim alleged, even if the court finds that proof of such factual allegations is improbable.

The courts are obligated to weed out those pleadings which allege a mere possibility of the prima facie elements of a claim to prevent "a plaintiff with 'a largely groundless claim to simply take up time of a number of other people, with the right to do so representing a *in terrorem* increment of the settlement value rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence.'" Dura Pharmaceuticals, Inc., v. Broudo, 544 U.S. 336, 347 (2005)(quoting Blue Chip Stamps v. Manor Drug Store, 421 U.S. 723, 741 (1975). "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should * * * be exposed at the point of minimum expenditure time and money by the parties and the court. Bell Atlantic Corp., ___ U.S. at ___, 127 S.Ct. at 1966 (quoting Wright & Miller, §1216 at 233-234).

/ / / / /

/ / / / /

Discussion

**Intentional Infliction of Emotional Distress**

Defendant moves to dismiss Plaintiff's claim for intentional infliction of emotional distress asserting that the conduct that Plaintiff complains of is not egregious enough to support this claim. Under Oregon law, a claim for intentional infliction of emotional distress only lies where the defendant intended to inflict severe emotional distress on the plaintiff, the defendant's acts were the cause of severe emotional distress, and the defendant's acts were an "extraordinary transgression of the bounds of socially tolerable conduct." Madani v. Kendall Ford, Inc., 312 Or. 198, 203 (1991). It is the defendant's acts, rather than their motives, that must be outrageous. Id. at 204.

The Oregon courts have limited the term intent to include only those situations where the defendant "'desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct.'" McGanty v. Staudenraus, 321 Or. 532, 550 (1995)(quoting Restatement (Second) of Torts, § 46, comment i (1965)). The conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Christofferson v. Church of Scientology, 57 Or. App. 203, 211 (1982) (quoting Restatement (Second) on Torts, § 46, comment d (1965)).

The determination of whether the alleged conduct is an extraordinary transgression of the bounds of socially tolerable conduct is initially a question of law for the courts. Delaney v. Clifton, 180 Or.App. 119, 129 (2002). "Whether the conduct alleged is sufficiently extreme or outrageous to be actionable is a fact-specific inquiry, one to be made on a case-by-case basis considering the totality of the circumstances." Id. at 130. Socially intolerable conduct is "conduct that is outrageous

in the extreme." Watte v. Edgar Maeyens, Jr., M.D., P.C., 112 Or.App. 234, 239 (1992). Racial and ethnic slurs can be socially intolerable. Lathrope-Olson v. Dept. of Transportation, 128 Or.App. 405, 408 (1994). Likewise, language used to sexually harass has also been determined to be socially intolerable. Id. "Conduct that is merely "rude, boorish, tyrannical, churlish and mean," however, does not satisfy that standard. Watte, 112 Or.App. at 239 (quoting Patton v. J.C. Penney Co., 301 Or. 117, 124(1986)). In addition to the content of the statements, the court will also consider the context, the frequency of the statements, and the existence of any special relationship, including an employer and employee relationship, between the parties. Harris v. Pameco Corp., 170 Or.App. 164, 171 (2000).

Plaintiff alleges that Defendant's actions, as described in the complaint, were "done intentionally with an improper, abusive, retaliatory, harassing, and discriminatory motive" with the intent to cause him to "suffer severe emotional harm or under circumstances in which it was substantially certain he would suffer such harm" and that he "suffered severe emotional harm, humiliation, and embarrassment" as a result of Defendant's acts. Amended Complaint at 21. He contends that these allegations, which link Defendant's conduct, at least in part, to a discriminative motive, are sufficient to withstand a motion to dismiss.

The conduct which Plaintiff complains of occurs fairly regularly in the workplace. Plaintiff had difficulties with his new supervisor, who exercised more control over Plaintiff and subjected him to more scrutiny in his attendance and performance than he did other employees. Plaintiff was not allowed to file a workers' compensation claim or take medical leave and his request for reinstatement of his seniority was denied. His request for assistance with the new timekeeping system and his complaints about his supervisor's offensive behavior were either ignored, not handled

immediately or found to be without merit.  Plaintiff was terminated for not abiding by his last chance agreement.  Even under the liberal system of notice pleading, these allegations do not rise to the level necessary to survive a motion to dismiss.

Last month, the United States Supreme Court issued an opinion in which it heightened the requirements needed to survive a motion to dismiss.  A court is now obligated to dismiss a complaint at the earliest opportunity if the allegations "in a complaint, however true, could not raise a claim of entitlement to relief" in the hopes of minimizing the time and money spent by the court and the parties on a deficient claim. Bell Atlantic Corp., ___ U.S. ___, 127 S.Ct. at 1966.  Even assuming that all of Plaintiff's allegations are true, they merely allege every day work conflicts and do not rise to conduct that exceeds the boundaries of socially acceptable conduct. See, Stone v. Nordstrom, Inc., 134 F.3d 379 (9th Cir. 1998); Robinson v. U.S. Bancorp, 2000 WL 435468 (D.Or. 2000); Franklin v. Portland Community College, 100 Or.App. 465 (1990).

Under the previous more lenient standard, this court found that similar allegations did not adequately support a claim for intentional infliction of emotional distress.  In Robinson, this court held that when a party alleges far more than the minimal amount necessary to satisfy the notice pleading requirements in Fed.R.Civ.P. 8, that party leaves itself open to a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Robinson, 2000 WL at *7.  The court then noted that:

> Oregon appellate courts have been very hesitant to impose liability for IIED claims in employment settings, even in the fact of serious employer misconduct. The mere fact that an employer overworks employees, makes unreasonable demands upon them, and is otherwise less than a model employer does not by itself constitute an extraordinary transgression of the bounds of socially tolerable conduct under Oregon law.

Id. at 8.  Here, Plaintiff's allegations of Defendant's conduct, which  are numerous and detailed, go well beyond that required under federal notice pleadings and open the door for a successful motion

to dismiss Plaintiff's intentional infliction of emotional distress claim.

Plaintiff's allegation that Defendant's actions were based on his race and/or disability does not create the egregious conduct necessary to survive the motion to dismiss. While Oregon courts have held that allegations of discriminatory conduct may be sufficient to meet the level of socially intolerable conduct necessary to state a claim for intentional infliction of emotional distress, it appears that the courts require the use of race-based, sex-based or disability-based insults to meet such standard. In Lathrope-Olson, the defendants referred to a female employee who was part Native American as "squaw". Lathorpe-Olson, 128 Or. App. at 408. An employee believed to be gay was called a "queer" by a supervisor and another employee in the presence customers and other workers, Whelan v. Albertsons, 129 Or. App. 501, 505 (1994), and a bus driver loudly berated and belittled a customer for attempting to board the bus with her assistance dog commenting that the customer did not appear to be disabled to him. Williams v. Tri-County Metropolitan Transp. Dist., 153 Or.App. 686, 688 (1998).

In a case involving racial discrimination, the Oregon appellate court found that allegations that a supervisor referred to the plaintiff as "boy," shoved him and attempted to lock him in a closet, coupled with allegations of excessive supervision and unjustified reprimands, were sufficient to support a claim for intentional infliction of emotional distress. Franklin, supra.

> Plaintiff's allegations that Hankins issued false reprimands, improperly denied training, and recommended to plaintiff that he leave his employment at PCC are not sufficient, without more, to meet this element. However, plaintiff did plead more; he alleged racially motivated verbal and physical abuse and alleged that all of Hankins' acts were part of a "continuing pattern of discrimination and retaliation."

Id. at 493 (citations omitted).

In this case, with the exception of Brittain's statement that "I don't know how to take you

kind of people," there are no allegations of any racial-based or disability-based statements aimed at Plaintiff.  The court finds that this innocuous statement does not rise to the level of abuse needed by the Oregon courts to support a claim for intentional infliction of emotional distress.

**Wrongful Discharge**

In his Seventeenth Claim for Relief, Plaintiff alleges that "Defendant's termination of plaintiff violated a clearly articulated pubic policy against racial discrimination, harassment and retaliation as evidenced in O.R.S. 659A.030, Title VII, 42 U.S.C. §1981, Family Medical Leave Act, Oregon Family Leave Act, Americans with Disabilities Act, and O.R.S. 659A.100 et seq." Amended Complaint at 21-22.  Defendant moves to dismiss the claim asserting that Plaintiff has an adequate alternative statutory remedy.  Plaintiff concedes this argument with regard to his discrimination and workers' compensation claims but contends that the remedies available to him for Defendant's violation of the Family Medical Leave Act ("FMLA") and Oregon's Family Leave Act ("OFLA") are not adequate and that he should be allowed to proceed with his wrongful discharge claim based on the violation of those statutes.

Generally, an employer may fire an at-will employee at any time and for any reason, unless doing so violates a contractual, statutory or constitutional requirement.  Patton v. J.C. Penney Co., 301 Or. 117, 120 (1986).  Oregon law recognizes two narrow exceptions to this rule.  The first is when an employee is discharged for exercising a job-related right of important interest.  The second is when the plaintiff is discharged for complying with a public duty.  Draper v. Astoria School Dist. No. 1C, 995 F.Supp. 1122, 1127 (D.Or. 1998)(citations omitted).

The availability of the common-law tort of wrongful discharge is further contingent upon the absence of adequate statutory remedies.  "Where an adequate existing remedy protects the interests

of society * * * an additional remedy of wrongful discharge will not be accorded." <u>Delaney v. Taco Time Int'l.</u>, 197 Or. 10, 17 (1984). The adequacy of the statutory remedies available to a plaintiff must also "capture the personal nature of the injury done to a wrongfully discharged employee as an individual." <u>Holien v. Sears, Roebuck and Co.</u>, 298 Or. 76, 97 (1984).

> Reinstatement, back pay, and injunctions vindicate the rights of the victimized group without compensating the plaintiff for such personal injuries as anguish, physical symptoms of stress, a sense of degradation, and the cost of psychiatric care. Legal as well as equitable remedies are needed to make the plaintiff whole.

<u>Id</u>.[5]

The FMLA allows for damages equal to the amount of any wages, salary, employment benefits or other compensation denied or lost to the employee or, in the absence of any such loss, any actual monetary losses sustained by the employee as a direct result of the violation, up to a sum equal to 12 weeks of salary or wages, plus interest on such amount calculated at the prevailing rate. Additionally, the court may award an additional amount in liquidated damages equal to above described amount if it determines that the employer acted with a degree of bad faith. Finally, the court can award attorney fees, expert witness fees, costs and such equitable relief as may be appropriate, including employment, reinstatement and promotion. 29 U.S.C. §2617. Under the OFLA, a court may "order injunctive relief and such other equitable relief as may be appropriate, including but not limited to reinstatement or the hiring of employee with or without back pay."

---

[5]This court has held that the common-law claim of wrongful discharge is also not available where the "legislature has intentionally abrogated the common law remedies by establishing an exclusive remedy (regardless of whether the courts perceive that remedy to be adequate)". <u>Draper</u>, 995 F.Supp. at 1128. Because neither party argues that the federal or state legislature intentionally abrogated common-law remedies by enacting the FMLA or the OFLA, the only issue before the court is whether the remedies provided in these statutes adequately protects the public interest in question.

However, back pay is limited to the two-year period immediately preceding the filing of the complaint.  The court may also award attorney fees and costs. O.R.S. 659A.885.

This court has previously held that the remedies provided by the FMLA are insufficient in that they do not provide damages for emotional distress and, therefore, fail to compensate the plaintiff for his personal loss.  "The remedies under the FMLA may be inadequate because wrongfully discharged employees cannot seek damages for emotional distress under that statute." Washington v. Fort James Operating Co., 110 F.Supp.2d 1325,1334 (D.Or. 2000).  This reasoning is applicable to the remedies allowed under the OFLA as well.

In the cases cited by Defendant for the proposition that the FMLA/OFLA remedies were adequate, the court did not specifically address the adequacy of the FMLA or OFLA remedies.  The court noted in Price v. Multnomah County, 132 F.Supp.2d 1290, 1295, that "[a]lthough I am inclined to agree with defendants that plaintiff's statutory remedies preempt his common law wrongful discharge claim, I need not decide that issue in this case."  In Speed v. Adidas America, Inc., 2006 WL 897978 at *13 (D.Or. 2006),  the court found that the remedies under FMLA/OFLA and Title VII adequately protect the public interest without looking at the remedies under FMLA or OFLA separately from the remedies available under Title VII, which the parties here agree are clearly adequate.  Additionally, the court in Speed found that the plaintiff failed to establish the causal connection necessary to support his wrongful discharge claim and failed to refute the employer's legitimate reason for plaintiff's termination.

The court agrees with, and adopts, Judge Jones' reasoning and conclusion as set forth in Washington.  Plaintiff should be allowed to continue with his wrongful discharge claim to the extent his termination was based on his attempts to invoke his rights under the FMLA and the OFLA.

Conclusion

Defendant's motion (#8) to dismiss Plaintiff's Sixteenth Claim for Relief for intentional infliction of emotional distress should be GRANTED.  Defendant's motion (#8) to dismiss Plaintiff's Seventeenth Claim for Relief for wrongful discharge should be GRANTED to the extent the claim is based on Defendant's violation of federal and state discrimination laws and state workers' compensation laws and DENIED to the extent the claim is based on Defendant's violation of FMLA and OFLA.

Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due no later than **July 6, 2007**.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed.  Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 19th day of June, 2007.


    /s/  Donald C. Ashmanskas
        DONALD C. ASHMANSKAS
        United States Magistrate Judge